IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-10490
_____

In the Matter of: GREAT PLAINS PIPELINE CONSTRUCTION,
INC.,

                              Debtor

NORTHWEST PIPELINE CORP.,

                              Appellant,

v.

BILLIE W. SCHELL; DOLLIE SCHELL, Individually and as
Trustee of the Billy and Dollie Schell Children's
Trust; GREAT PLAINS EQUIPMENT, INC.; FLOYD D. HOLDER,
Chapter 7 Trustee for Great Plains Pipeline
Construction, Inc.; WEST TEXAS PIPELINE CONSTRUCTION,
INC.; CLARK L. BESACK; CHRISTIE L. BESACK, Individually
and as Trustee of the Clark and Christie Besack
Children's Trust,

                              Appellees.

_____

Appeal from the United States District Court
for the Northern District of Texas
(5:95-CV-22-C)
_____
October 17, 1996
Before KING, DAVIS, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

_____

    [*] Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

Northwest Pipeline Corporation ("Northwest") appeals the district court's affirmance of an order of the bankruptcy court which approved a compromise and settlement of three adversary proceedings brought by the Chapter 7 trustee, Floyd Holder, against several insider defendants. Northwest contends that the bankruptcy court erred in its application of the standards for approval of a compromise and settlement and in its inclusion in its order of language precluding refiling by any party in interest of the causes of action brought by the trustee. During oral argument this court was advised that Northwest had settled its claims and causes of action against the debtor, Great Plains Pipeline, Inc. ("Pipeline"), and was no longer a creditor of the bankruptcy estate. We therefore ordered supplemental briefing on the issue of Northwest's standing to bring this appeal. After consideration of the supplemental briefs, the original briefs, and the record on appeal, we conclude that Northwest lacks standing for the following reasons.

Standing to appeal a bankruptcy order is limited to "persons aggrieved" by the order. Rohm & Hass Texas, Inc. v. Ortiz Bros. Insulation, Inc., 32 F.3d 205, 210 n.18 (5th Cir. 1994); In re El San Juan Hotel, 809 F.2d 151, 154 (1st Cir. 1987). To qualify as a "person aggrieved," a party must show that it is "'directly and adversely affected pecuniarily'" by the order appealed, or that the order diminishes its property, increases its burdens, or impairs its rights. Cajun Elec. Power Coop., Inc. v. Central La.

Elec. Co, Inc., 69 F.3d 746, 749 (5th Cir.)(quoting In re El San Juan Hotel, 809 F.2d at 154), withdrawn in part, 74 F.3d 599 (5th Cir. 1995), cert. denied, 64 U.S.L.W. 3741 (U.S. Oct. 7, 1996) (No. 95-1727). Appellate standing in the bankruptcy context is limited to persons whose interests are directly affected in order to prevent bankruptcy proceedings from becoming mired in protracted litigation on behalf of any number of parties who may be indirectly involved or affected by each decision of the bankruptcy court. In re El San Juan Hotel, 809 F.2d at 154; Kane v. Johns-Manville Corp., 843 F.2d 636, 642 (2d Cir. 1988); In re Fondiller, 707 F.2d 441, 443 (9th Cir. 1983).

Northwest asserts three bases for its standing as a "person aggrieved." First, Northwest argues that it has an interest in the assets of the bankruptcy estate because it is a codebtor with Pipeline as to the claims of several subcontractors and suppliers who have filed mechanic's and materialmen's liens on the pipeline owned by Northwest. Northwest states that in order to remove the liens, it will have to pay whatever debts are not satisfied by Pipeline. Therefore, Northwest argues, its property is diminished by the trustee's failure to reach an appropriate compromise because every dollar that the bankruptcy estate is not able to pay the subcontractors and suppliers is another dollar that Northwest must pay.

Northwest's argument does establish a theoretical link between its pecuniary interest and the assets of the bankruptcy

3

estate.  However, it is not clear from the record that the subcontractors and suppliers do not have a direct right of action against Northwest,[1] in which case the ability of the estate to satisfy these debts will in all likelihood have no bearing on the amount paid by Northwest.  Even assuming that Northwest had established that the settlement approved by the bankruptcy court adversely affected its economic interests, we still must determine whether Northwest is the proper proponent of the rights it seeks to assert.  See Kane, 843 F.2d at 642.  Northwest's claim is that the settlement generated insufficient funds to satisfy creditors; since Northwest is no longer a creditor, this claim effectively asserts the rights of those subcontractors and suppliers who do maintain valid claims against the estate.  It would be inappropriate to permit Northwest, a third party, to disturb a settlement based on the rights of creditors who themselves are capable of asserting these rights, simply because Northwest faces the prospect of potential collateral injury.  See id. at 643-44.

Second, Northwest claims that it is a "person aggrieved" because it retains a right of subrogation against the estate for debts owed to Hartford, which provided workers' compensation

---

[1]  It is clear that these creditors have filed lawsuits against Northwest for the claims in question.  Northwest does not argue here that any recovery by a subcontractor or supplier would entitle Northwest to be subrogated to the rights of the subcontractor or supplier against the debtor.

4

insurance to Pipeline during construction of the pipeline for Northwest. Northwest contends that when it settled its claims with the estate, it waived its share of any distribution from the estate on any claims acquired through subrogation except for the claims of Hartford. Because Northwest has been adjudged liable to Hartford for over $300,000 in unjust enrichment, Northwest contends that it continues to have an interest in the ability of the estate to pay the outstanding premium owed to Hartford.

The trustee argues that Northwest is not entitled to subrogation for the Hartford claim because Northwest absolutely and unconditionally waived all claims against the debtor's estate. The trustee further argues that even if the settlement between Northwest and the estate left a loophole for the Hartford claim, and even if Northwest should eventually pay Hartford, several provisions of the Bankruptcy Code nevertheless undermine Northwest's subrogation claim. Specifically, the trustee contends that under 11 U.S.C. § 509(c), Northwest cannot recover from the estate until the claims of Hartford are paid in full, which is entirely unlikely; that Northwest should not be paid until all the subcontractor and supplier claims are paid in full; and that 11 U.S.C. § 509(b)(2) precludes Northwest's subrogation claim because Northwest received the consideration for the claim held by Hartford.

This court cannot determine based on the present record whether the settlement agreement between Northwest and the estate

preserved Northwest's right of subrogation with respect to the Hartford claim. Nor is it apparent at this juncture whether Northwest, which is appealing the state court judgment in favor of Hartford, will ultimately be held to pay such claim. Even if Northwest did eventually pay Hartford, it is not clear whether under the Bankruptcy Code Northwest would be entitled to subrogation. Northwest's standing argument is essentially that its property will be diminished by the bankruptcy order in question if Northwest is unsuccessful in its Hartford appeal, if its settlement with the estate in fact carved out a right of subrogation with respect to the Hartford claim, if the Bankruptcy Code permits subrogation under the facts of this case, and if Hartford is ever paid in full. In short, the sole certainty with respect to this argument is that any claim that Northwest may have as a subrogee is too remote and speculative to serve as the basis for standing to appeal a settlement between the trustee and various insiders.

Third, Northwest argues that it is a "person aggrieved" because over broad language in the bankruptcy court's order prohibits Northwest from filing claims outside of bankruptcy against the insiders. The relevant language in the order provides, "It is further ordered that the above styled-adversary proceedings are hereby dismissed, with prejudice, to refiling by the Trustee and any other party in interest as to the causes of action alleged in the Trustee's Complaint." Northwest contends

6

that by precluding any causes of action Northwest may have against any of the insiders outside of bankruptcy, this order impairs its rights.

This argument also represents one of Northwest's two issues on appeal. In its original brief, Northwest requested that this court "make it clear that as the Bankruptcy Court pointed out . . . , it 'does not . . . [have] the authority to prohibit creditors and parties in interest from asserting causes of action other than causes of action asserted by the Trustee in the adversary proceedings.' . . . Furthermore, this Court should make it clear that Northwest and other creditors have a right to assert those causes of action which belong to the creditors and not to the bankruptcy estate regardless of whether the Trustee attempted to bring those actions before the Bankruptcy Court in the adversary complaints."

Northwest has not, however, provided this court with any specifics as to any claims that it may hereafter bring against the insiders, other than to say that such claims are related to the transactions sued upon by the trustee. In essence, Northwest asks this court to render an advisory opinion as to how the language of the bankruptcy court's order may be construed in the face of a specific claim. We decline to do so.

For the foregoing reasons, we determine that Northwest is without standing to bring this appeal, and the appeal is hereby DISMISSED.